THE STATE OF OHIO, APPELLEE, *v.* CHASTEEN, APPELLANT.

(No. CA84-06-063—Decided December 31, 1984.)

*Gerald G. Froelke,* for appellee.

*Mary G. Nash & Associates* and *Gary A. McGee,* for appellant.

KOEHLER, J. The pertinent facts of this cause are simple and undisputed. On March 16, 1984, at approximately 1:45 a.m., appellant, Pamela · K. Chasteen, was involved in an automobile accident in the city of Fairfield. Both appellant and the other driver stopped to assess the damage. At this time, there was no exchange of information between the drivers; they returned to their respective vehicles and drove away.

The following morning, at approximately 10:00 a.m., the other driver reported this accident to the Fairfield Police Department. After a police investigation, appellant was charged with leaving the scene of an accident under Fairfield Municipal Ordinance 335.12.

On May 3, 1984, after a pre-trial conference, the charge against appellant was amended to failure to report an accident. R.C. 4509.74. Appellant entered a plea of no contest to such amended charge and the court found her guilty. Appellant was fined $100 plus costs.

At this point of the proceedings, the court, pursuant to R.C. 4509.101,[1] inquired as to whether appellant carried liability insurance on the date of the accident. Appellant stated that she did not. She indicated, however, that such failure to carry liability insurance was

---

[1] R.C. 4509.101 was amended substantially effective August 1, 1984. This opinion considers R.C. 4509.101 only as it was written prior to August 1, 1984.

inadvertent. Her final divorce hearing had taken place the day prior to the accident and her former husband had cancelled the insurance on her motor vehicle without her knowledge. Additionally, appellant stated that she had paid the deductible to the other driver and had made written arrangements with the other driver's insurance company to pay the balance of the damages. Appellant also represented to the court that she presently carried liability insurance.

In accordance with R.C. 4509.101(B)(1), as then existing, the court ordered that appellant's driver's license be suspended for ninety days and that her automobile plates and registration be impounded. It is from this part of the court's judgment, execution of which has been stayed pending appeal, that appellant appeals to this court.

Appellant raises the following two assignments of error:

First assignment of error:

"The trial court erred to the prejudice of defendant-appellant in ruling that the Financial Responsibility Act Section 4509.101 as applied to defendant-appellant and as weritten [sic], was constitutional."

Second assignment of error:

"The trial court erred to the prejudice of the defendant by applying the Financial Responsibility Act, Section 4509.101, as it then existed, to the non-traffic offense upon which the defendant-appellant herein appeared on May 3, 1984."

Where a case can be decided on another basis, it is the established practice of courts in Ohio not to reach the constitutional issues presented. *Bd. of Edn.* v. *Brunswick Edn. Assn.* (1980), 61 Ohio St. 2d 290 [15 O.O.3d 352]; *McClung* v. *Bd. of Edn.* (1976), 46 Ohio St. 2d 149 [75 O.O.2d 197]; *Standard Ohio Co.* v. *Warrensville Hts.* (1976), 48 Ohio App. 2d 1 [2 O.O.3d 4]. Accordingly, our review of this appeal will begin with a consideration of appellant's second assignment of error.

R.C. 4509.101, as written prior to August 1, 1984, in pertinent part, provided as follows:

"(A) No person shall operate, or permit the operation of, a motor vehicle in this state, unless proof of financial responsibility is maintained with respect to that vehicle * * *.

"(B)(1) A defendant, who is *charged* with a *traffic offense* that requires an appearance in court, shall present the court at the time of his appearance * * * with proof of financial responsibility covering the operation of the vehicle at the time of the offense * * *. If, as the result of the defendant's failure to show such proof of financial responsibility at his appearance * * *, the court determines that the defendant has violated division (A) of this section, the court shall do all of the following:

"(a) Order the impoundment of the certificate of registration and registration plates of the motor vehicle involved in the traffic offense * * *;

"(b) Order the suspension for ninety days of the license of the defendant; * * *." (Emphasis added.)

In support of her second assignment of error, appellant argues that it was error for the trial judge to apply the provisions of R.C. 4509.101 to her at the May 3, 1984 hearing in that she appeared before the court on a charge which did not constitute a "traffic offense." It is appellant's contention that R.C. 4509. 74, failure to report an accident, is not a traffic offense.

Even without reaching the question of whether failure to report an accident constituted a traffic offense for purposes of R.C. 4509.101, as then existing, appellant's second assignment of error is clearly without merit. R.C. 4509.101, as then existing, merely required that the defendant be "charged with a traffic offense." As noted above, after the police investigation of the accident, appellant was initially charged with leaving the scene of an accident; such constitutes a "traffic offense." Traf. R.

13(B). That appellant actually appeared before the court upon an amended charge which may or may not have constituted a "traffic offense" is immaterial. Accordingly, on this ground, it was not error for the trial court to apply the provisions of R.C. 4509.101, as then existing, to appellant.

Being necessary to a decision of this cause, we turn now to a consideration of the constitutional issue raised in appellant's first assignment of error. The due process provision of the Fourteenth Amendment to the Constitution of the United States provides that no person shall be deprived of life, liberty or property without due process of law.

When considering an assignment of error which attacks the constitutionality of a legislative enactment, a certain perspective is required. All statutes enjoy a presumption of constitutionality. *State* v. *Dorso* (1983), 4 Ohio St. 3d 60; *Peebles* v. *Clement* (1980), 63 Ohio St. 2d 314 [17 O.O.3d 203]; *State* v. *Wear* (1984), 15 Ohio App. 3d 77, 78. Notwithstanding this "perspective," it is our conclusion that R.C. 4509.101, as written prior to August 1, 1984, unconstitutionally deprived appellant of an entitlement without due process of law.

Had the statute here involved barred the issuance of a motor vehicle license to all those motorists who did not carry liability insurance or who did not post security, the statute would not violate the Fourteenth Amendment under decisions of the Supreme Court of the United States. *Bell* v. *Burson* (1971), 402 U.S. 535. However, once a motor vehicle license is issued, its continued possession may become essential in the pursuit of the licensee's livelihood. "Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." *Bell, supra,* at 539. And despite the consideration that a license to operate a motor vehicle has been determined to be a "privilege" and not a "property right" under Ohio case law, *State* v. *Newkirk* (1968), 21 Ohio App. 2d 160 [50 O.O.2d 253], "relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.' " *Bell, supra,* at 539. See, also, *Sherbert* v. *Verner* (1963), 374 U.S. 398 (disqualification for unemployment compensation); *Slochower* v. *Bd. of Higher Edn.* (1956), 350 U.S. 551 (discharge from public employment); *Speiser* v. *Randall* (1958), 357 U.S. 513 (denial of a tax exemption); *Goldberg* v. *Kelly* (1970), 397 U.S. 254 (withdrawal of welfare benefits).

Under R.C. 4509.101, as written prior to August 1, 1984, appellant's motor vehicle license was suspended upon the mere charge of a traffic offense. No judicial inquiry concerning the substance of the charge was required. While many controversies have raged about the Due Process Clause, it is fundamental that except in emergency situations, and this is not one, due process requires that when a state seeks to terminate an interest such as that here involved, it must afford a hearing that is "meaningful" and "appropriate to the nature of the case" before the termination becomes effective. *Armstrong* v. *Manzo* (1965), 380 U.S. 545, 552; *Mullane* v. *Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 313; *Bell, supra,* at 541, 542. R.C. 4509.101, as then existing, provided neither a "meaningful" hearing nor a hearing "appropriate to the nature of the case." Accordingly, it is our conclusion that appellant's first assignment of error is meritorious in that R.C. 4509.101, as then existing, unconstitutionally deprived appellant of an entitlement without due process of law.

The judgment or final order herein appealed from is hereby reversed to the extent that such judgment or final

order, pursuant to R.C. 4509.101, requires the suspension of appellant's driver's license for ninety days and impoundment of her automobile plates and registration. The remainder of such judgment or final order is affirmed and this cause is remanded for further proceedings.

*Judgment affirmed in part,*
*reversed in part and*
*cause remanded.*

JONES and CASTLE, JJ., concur.

CASTLE, J., retired, of the Twelfth Appellate District, was assigned to active duty under Section 6(C), Article IV, Constitution.